1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN XIONG,                              No.  2:18-cv-00373 TLN KJN

12                    Petitioner,

13        v.                                  FINDINGS & RECOMMENDATIONS

14   P. ASUNCION, Warden,

15                    Respondent.

16

17   I.  Introduction

18        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2015 convictions for

20   second degree robbery with personal discharge of a firearm and felon in possession of a firearm.

21   He was sentenced to thirty-six years and four months in state prison.  Petitioner claims as follows:

22   (1) appellate counsel rendered ineffective assistance by filing a Wende brief in petitioner's direct

23   appeal; (2) trial counsel rendered ineffective assistance by failing to argue a statutory prohibition

24   for the imposition of separate sentences for being a felon in possession of a firearm and

25   discharging a firearm during a robbery; (3) the trial court erred in imposing sentences for being a

26   felon in possession of a firearm and discharging a firearm during a robbery; (4) insufficiency of

27   the evidence; (5) error regarding trial court's failure to exercise its discretion to dismiss the

28   firearm enhancement; (6) error concerning the application of conduct credits; and (7) error

1  regarding the failure to recall remittitur to exercise sentencing discretion.  After careful review of

2  the record, this court concludes that the petition should be denied.

3  II.  Procedural History

4      *State Court Proceedings*

5      On December 8, 2015, a jury found petitioner guilty of second-degree robbery (Cal. Pen.

6  Code, [1] § 211) and found true the allegation of personally discharging a firearm (§ 12022.53(c));

7  it also found petitioner guilty of being a felon in possession of a firearm (§ 29800(a)(1)).  (ECF

8  No. 14-11 at 206-07.) [2]  On January 8, 2016, petitioner was sentenced to a total of thirty-six years,

9  four months in state prison. (ECF No. 14-11 at 225-26.)

10     Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

11  District.  (ECF No. 14-11 at 224.)  The Third District Court of Appeal affirmed the conviction on

12  February 24, 2017.  (ECF No. 14-1.)  He did not seek review of that decision with the California

13  Supreme Court.

14     On June 19, 2017, petitioner filed a petition for writ of habeas corpus with the Sacramento

15  County Superior Court.  (ECF No. 14-3.)  The state superior court denied the petition in a

16  reasoned decision dated July 26, 2017.  (ECF No. 14-4.)

17     Next, petitioner filed a petition for writ of habeas corpus with the Third District Court of

18  Appeal on August 31, 2017.  (ECF No. 14-5.)  The petition was denied without comment on

19  September 8, 2017.  (ECF No.14-6.)

20     On October 12, 2017, petitioner filed a petition for writ of habeas corpus with the

21  California Supreme Court (S244833).  (ECF No. 14-7.)  The state supreme court denied the

22  petition without comment on January 10, 2018.  (ECF No. 14-8.)

23     Thereafter, on October 11, 2018, petitioner filed a second habeas petition with the

24  Sacramento County Superior Court.  (ECF No. 31-1.)  In a reasoned decision dated December 28,

25  _____

26  [1] All further statutory references are to the California Penal Code unless otherwise indicated.

27  [2] "ECF" refers to this court's electronic case management/filing system; specific numerical
references are to the document number filed and specific page references are to those page
28  numbers assigned at the time of electronic filing.

2

1 │ 2018, the superior court denied the petition in its entirety.  (ECF No. 13-2.)

2 │       Petitioner filed a second state habeas petition in the Third District Court of Appeal on

3 │ March 1, 2019.  (ECF No. 31-3.)  The state appellate court denied the petition without comment

4 │ on March 8, 2019.  (ECF No. 31-4.)

5 │       On April 11, 2019, petitioner filed a second habeas petition with the California Supreme

6 │ Court (S255183).  (ECF No. 31-5.)  The petition was summarily denied July 10, 2019.  (ECF No.

7 │ 31-6.)

8 │       On May 22, 2019, Sacramento County Superior Court Judge Ernest W. Sawtelle issued an

9 │ order in response to a request by the California Department of Corrections and Rehabilitation to

10 │ recall petitioner's sentence pursuant to section 1170(d)(1).  Judge Sawtelle declined to recall and

11 │ resentence petitioner in a reasoned decision.  (ECF No. 31-7.)

12 │       Petitioner thereafter filed a third petition for writ of habeas corpus with the California

13 │ Supreme Court (S26296) on May 15, 2020; the state's highest court denied the petition on July

14 │ 15, 2020.

15 │       *Federal Court Proceedings*

16 │       Petitioner filed the instant petition on February 16, 2018.  (ECF No. 1.)  Respondent filed

17 │ an answer on September 7, 2018.  (ECF No. 13.)  Following a series of filings concerning

18 │ petitioner's request for a stay, later effectively withdrawn, respondent filed a supplemental

19 │ answer on January 29, 2020, addressing petitioner's additional claims.  (ECF No. 30.)  Lastly, on

20 │ July 9, 2020, petitioner filed a traverse.  (ECF No. 38.)

21 │ III.  Facts[3]

22 │       In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the

23 │ California Court of Appeal for the Third Appellate District provided the following factual

24 │ summary:

25 │             On April 5, 2012, at approximately 12:25 a.m., Qaisara Malik was
            working at B and W Liquor, a liquor store in Sacramento, when a

26 │

27 │ [3] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
District in <u>People v. Xiong</u>, No. C081131, dated February 24, 2017, a copy of which was lodged

28 │ by respondent on September 11, 2018.  (ECF No. 14-1.)

man with a bandana covering his face came into the store, pointed a gun at her, and demanded she give him all the money. While Malik put money on the counter, the man demanded more money and repeatedly threatened to shoot her. She tried to give him cigarettes and liquor. As she bent down to get the cigarettes, she heard a gunshot and the man ran out of the store.

Malik called 911. She described the robber as Asian, medium build, between 5′8″ and 5′10″ tall, wearing a hat and a blue bandana. She also informed law enforcement the money he had taken had a tracking device.

Within a few minutes, law enforcement picked up the tracking signal in the money. About 10 minutes after the robbery of the liquor store, the tracking signal was detected about a mile away from the liquor store, emanating from a Subaru Forester parked in a 7–Eleven parking lot. Codefendant Harpreet Arman was in the driver's seat and defendant was in the front passenger seat. As he pulled up behind the car, Officer Eagleton of the Sacramento Police Department saw defendant reach toward the center of the car.

Officer Eagleton ordered the men to exit the vehicle with their hands up, and get on the ground. Arman complied, but defendant did not. Defendant got out of the car, walked towards the back of the car, and began to take off his jacket. Officer Eagleton took defendant to the ground. Defendant appeared intoxicated, his eyes were red and he smelled of alcohol. Officer Eagleton searched the car and found a blue bandana on the front passenger seat, and cash stuffed between the front passenger seat and the center console. The tracking device and more cash were on the floor of the car near the passenger seat. The total amount of cash found in the car was $423. A blue hat and a loaded .32–caliber semiautomatic pistol were in the backseat.

Law enforcement brought Malik to the parking lot for an infield show-up identification. She was not certain if defendant was the robber, but was certain Arman was not. The blue bandana and gun were similar to those used by the robber.

Officers found an expended shell casing at the liquor store. A criminalist compared it with rounds fired from the gun recovered from Arman's car, and concluded the shell casing found at the scene was fired from the same gun. Defendant's hands tested positive for gunshot residue. A criminalist specializing in DNA analysis tested the bandana for DNA and generated a partial profile consistent with defendant.

At trial Malik described the robber as an Asian male, approximately 5′8″ inches tall, wearing a blue baseball cap, a blue bandana over his face, and a black jacket. His eyes were red and "glossed over" and she thought he was high or drunk. She estimated the robber had taken between $500 and $1,000.

As evidence of identity, the prosecution put on evidence of another robbery committed approximately two hours before the B and W Liquor store robbery at a mini mart approximately 40 miles north of

4

Sacramento. The store clerk from the mini mart robbery told law enforcement that a white man with a Chinese accent, whose face was covered by a bandana, entered the store, demanded money, and threatened to shoot him if he did not comply. The clerk handed the man money over the counter. The man pointed the gun, fired it, and said, "give me the rest." The clerk handed him more money and the man left. The shell casing and bullet fragments found at that store also matched the gun found in Arman's car. The robbery was captured on the store's video surveillance. Malik said still shots of the robber taken from the surveillance video in the mini mart, which showed a man with a blue bandana covering his face, wearing a black jacket and a hat, looked like the man who robbed her store. Further, she said the gun the man was holding in the still shots looked similar to the gun that the robber used at her store.

Arman testified that he was gambling at the Marysville Casino late in the evening on April 4, 2012, when he ran into defendant. Defendant was intoxicated and asked Arman for a ride to a friend's house in Sacramento. Arman agreed. Defendant gave Arman turn by turn directions but did not tell him where they were going. Defendant also told Arman he needed money but did not want to borrow money from Arman. Defendant told Arman to stop the car at B and W Liquor. Defendant put a blue bandana on his face, pointed the gun at Arman, and told him to wait or he would kill him or have him killed. A couple minutes later Arman heard a gunshot and defendant came out of the store and got back in the car with money. Defendant again pointed the gun at Arman and told him to drive. He then told him to pull over at a 7–Eleven so he could count his money. When the police pulled up, defendant tossed the gun in the back and put the money in the center console of the car. Arman knew defendant was a Hmong Nation Society gang member, and was afraid of him.

An information charged defendant and codefendant with second degree robbery (Pen. Code, § 211—count 1),1 and charged defendant with being a felon in possession of a firearm (§ 29800, subd. (a)(1)—count 2). The information alleged, as to count one, that defendant personally discharged a firearm during the commission of the offense (§ 12022.53, subd. (c)), and that codefendant was armed with a firearm (§ 12022, subd. (a)(1)). The information also alleged defendant was not eligible for probation (§ 1170, subd. (h)(3)), had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), and a prior serious felony conviction (§ 667, subd. (a)).

In December 2015, a jury found the defendants guilty of all charges and found all allegations true. In bifurcated proceedings, the trial court found the prior conviction allegations true.

(People v. Xiong, slip op. at *1-2.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United

States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77 (2006).

6

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[4] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

2   considering de novo the constitutional issues raised").

3          The court looks to the last reasoned state court decision as the basis for the state court

4   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

5   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

6   previous state court decision, this court may consider both decisions to ascertain the reasoning of

7   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

8   federal claim has been presented to a state court and the state court has denied relief, it may be

9   presumed that the state court adjudicated the claim on the merits in the absence of any indication

10  or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

11  may be overcome by a showing "there is reason to think some other explanation for the state

12  court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on

13  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

14  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

15  merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a

16  state court fails to adjudicate a component of the petitioner's federal claim, the component is

17  reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

18         Where the state court reaches a decision on the merits but provides no reasoning to

19  support its conclusion, a federal habeas court independently reviews the record to determine

20  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

21  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

22  review of the constitutional issue, but rather, the only method by which we can determine whether

23  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

24  reasoned decision is available, the habeas petitioner has the burden of "showing there was no

25  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

26         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

27  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

28  just what the state court did when it issued a summary denial, the federal court reviews the state

8

court record to "determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 101. "It remains the petitioner's burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860 (citing Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

V. Petitioner's Claims

A. *Ineffective Assistance of Appellate Counsel*

Petitioner claims appellate counsel provided ineffective assistance by filing a Wende[5] brief with the appellate court following his conviction. (ECF No. 1 at 5, 16-24.) Respondent maintains the state court's denial of the claim was reasonable, thus precluding relief in these proceedings. (ECF No. 13 at 6-8.)

On June 19, 2017, petitioner filed his first state habeas petition in the Sacramento County Superior Court, asserting a single claim that appellate counsel provided ineffective assistance of counsel by filing a Wende brief. More particularly, petitioner claimed appellate counsel should have withdrawn from representation and that the court of appeal's review was biased. (ECF No. 14-3.)

The last reasoned rejection of petitioner's first claim is the decision of the Sacramento County Superior Court:

> Petitioner appealed his conviction. His appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, informing the court she found no arguable issues. Petitioner was advised of his right to file a supplemental brief, but the court received no communication from Petitioner. The appellate court examined the

---

[5] People v. Wende, 25 Cal.3d 436 (1979).

1    record and found no arguable error that would benefit Petitioner.

2    Petitioner's convictions and sentence was affirmed. (*People v. Xiong*, No. C081131).

3    In the instant petition, Petitioner challenges his appellate counsel's

4    decision to file a *Wende* brief, and argued that in doing so, appellate counsel did not effectively advocate on his behalf. Petitioner

5    suggests that counsel should have requested to withdraw from the case. Petitioner also faults the appellate court's review of the record,

6    because it was done with a bias toward affirming the judgment of the lower court.

7    A petitioner seeking relief by way of habeas corpus has the burden

8    of stating a prima facie case entitling him to relief. (*In re Bower* (1985) 38 Cal.3d 865, 872.) To satisfy the initial burden of pleading,

9    the petitioner should (1) state fully and with particularity facts on which the relief is sought, and (2) include copies of reasonably

10    available documentary evidence supporting the claims. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Habeas corpus cannot serve [as]

11    a second appeal or a substitute appeal. (*In re Harris* (1993) 5 Cal.4th 813, 829.)

12    To show constitutionally inadequate assistance of counsel, a

13    defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the

14    defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) Actual prejudice must be shown, meaning that there is a reasonable

15    probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.

16    *See also In re Reno* (2012) 55 Cal.4th 428, 493 [applying the Strickland standard to habeas petitions].)

17    Petitioner cannot make the requisite showing that he is entitled to

18    judicial relief. First, Petitioner had the right and opportunity to bring any perceived issues to the attention of the appellate court while his

19    appeal was pending, but failed to do so. Here, too, Petitioner has failed to identify any issues appellate counsel should have raised on

20    his behalf. (*In re Smith* (1970) 3 Cal.3d 192, 202-203 [appellate counsel may be deemed ineffective if she fails to raise potentially

21    successful contentions on appeal].) As a result, Petitioner has not shown that there is a reasonable probability that, but for the

22    attorney's error(s), the result would have been different. (See *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

23    For the foregoing reasons, the petition is hereby DENIED.

24    (ECF No. 14-4 at 1-2.)

25    <u>Applicable Legal Standards</u>

26    A habeas claim alleging appellate counsel was ineffective is evaluated under <u>Strickland</u>.

27    See <u>Williams v. Taylor</u>, 529 U.S. at 390-391. To establish ineffective assistance of counsel,

28

petitioner must prove:  (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-694, 697 (1984).  As the high court has observed, appellate counsel performs properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim.  Jones v. Barnes, 463 U.S. 745, 752 (1983); Smith v. Murray, 477 U.S. 527, 536 (1986).  "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."  Davila v. Davis, 137 S. Ct. 2058, 2067 (2017).   "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).  The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

In People v. Wende, the California Supreme Court established a constitutionally sufficient procedure by which appellate counsel may inform the court of the nature of an appeal and decline to brief issues judged to be frivolous.  Smith v. Robbins, 528 U.S. 259, 265 (2000).  Appellate counsel's decision to file a Wende brief is reviewed under Strickland.  Smith, 528 U.S. at 285.  Even if petitioner could demonstrate his appellate attorney acted unreasonably, he must still show prejudice.  Smith, at 285-286.  Habeas relief for ineffective assistance of counsel may only be granted if the state-court decision unreasonably applied the Strickland standard.  Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

### Analysis

The state court's determination is not unreasonable.

First, to the degree petitioner argues that the Wende procedure in his case violated Anders v. California, 386 U.S. 738 (1967), the argument is without merit.  The United States Supreme Court has specifically held that the Wende procedure meets the requirements identified in Anders.  Smith v. Robbins, 528 U.S. at 284 ("It is enough to say that the Wende procedure...affords

1  adequate and effective appellate review for criminal indigents. Thus, there was no constitutional

2  violation in this case simply because the <u>Wende</u> procedure was used").

3        In this case, appellate counsel filed a <u>Wende</u> brief with the California Court of Appeal,

4  Third Appellate District, on or about August 31, 2016.  (ECF No. 14-2.)  In the brief, appellate

5  counsel declares, under penalty of perjury, that she advised petitioner of his right to file a

6  supplemental brief in written correspondence.  (ECF No. 14-2 at 18-19.)  Petitioner did not file a

7  supplemental brief with the state's intermediate appellate court.  (ECF No. 14-1 at 5 ["Defendant

8  was advised of his right to file a supplemental brief within 30 days of the filing of the opening

9  brief.  More than 30 days elapsed, and we received no communication from defendant"].)

10  Further, the state intermediate court conducted an independent review on appeal and affirmed

11  petitioner's convictions.  (ECF No. 14-1 at 5 ["Having examined the record, we find no arguable

12  error that would result in a disposition more favorable to defendant"].)  Here then, the record

13  reveals appellate counsel properly complied with the <u>Wende</u> procedure, that petitioner failed to

14  file a supplemental brief despite being advised of his right to do so, and that, following

15  independent review, the appellate court found no arguable issue.

16        In the <u>Wende</u> brief context of an ineffective assistance of counsel claim, a petitioner must

17  first show that counsel was objectively unreasonable in failing to find arguable issues of appeal,

18  i.e., unreasonably failed to discover nonfrivolous issues and failed to file a merits brief raising

19  them.  <u>Smith v. Robbins</u>, 528 U.S. at 285.  Second, the petitioner must demonstrate prejudice, i.e.,

20  a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, the

21  petitioner would have prevailed on appeal.  <u>See id.</u>

22        Petitioner made no effort in his state habeas petition to identify what issues counsel should

23  have raised; he merely asserted it was error for counsel to file a <u>Wende</u> brief.  His claim as

24  presented in that court was conclusory and unsupported.  <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir.

25  1994).  Nor has petitioner demonstrated prejudice.  Simply put, there were no meritorious issues

26  that appellate counsel failed to raise.  <u>See Jones v. Barnes</u>, 463 U.S. at 751-52 (appellate counsel

27  does not have an obligation to raise every nonfrivolous argument); <u>Miller v. Keeney</u>, 882 F.2d at

28  1434-35 (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel);

1   see also Moorman v. Ryan, 628 F.3d 1102, 1107 (9th Cir. 2010) ("If trial counsel's performance

2   was not objectively unreasonable or did not prejudice [petitioner], then appellate counsel did not

3   act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and

4   [petitioner] was not prejudiced by appellate counsel's omission"); Wildman v. Johnson, 261 F.3d

5   832, 840 (9th Cir. 2001) ("[petitioner] cannot sustain his claim for ineffective assistance of

6   appellate counsel because the issues he raises are without merit"); Featherstone v. Estelle, 948

7   F.2d 1497, 1507 (9th Cir. 1991) (where trial counsel's performance did not fall below Strickland

8   standard, claim that appellate counsel was ineffective for failing to raise ineffective assistance of

9   trial counsel on appeal must fail).

10          Next, petitioner asserts, without any explanation or evidence, that the Third District Court

11   of Appeal's review was biased toward affirming the lower court's judgment.  This claim too is

12   unsupported and conclusory.  James v. Borg, 24 F.3d at 26.  It merits no further discussion.

13          To the degree petitioner later explained what arguments appellate counsel should have

14   asserted on appeal (see ECF No. 1 at 18-19; ECF Nos. 14-5 &14-7), namely, insufficiency of the

15   evidence and an erroneous ruling by the trial court in denying a motion for mistrial, a review of

16   the record reveals those issues lack merit as sufficient evidence supports the jury's verdicts and

17   the trial court's ruling concerning the testimony of co-defendant Arman was reasonable.  See

18   Discussions, post.  Therefore, appellate counsel cannot be faulted for failing to raise them.

19          In sum, petitioner has failed to demonstrate deficient performance or prejudice with

20   respect to his claim of ineffective assistance of appellate counsel.  The United States Supreme

21   Court has upheld California's Wende procedure as constitutionally adequate.  Smith v. Robbins,

22   528 U.S. at 283.  Further, there is no evidence in the record that appellate counsel's investigation

23   into possible meritorious issues to raise on appeal was incomplete or that appellate counsel's

24   decision not to raise the claims now suggested by petitioner fell below an objective standard of

25   reasonableness.  Nor is there any evidence to suggest the California Court of Appeal's

26   independent review was biased or improper in any way.  Therefore, the undersigned concludes

27   the state court's decision was not contrary to, or an unreasonable application of, clearly

28   established Supreme Court authority.  28 U.S.C. § 2254(d).  The decision was not "so lacking in

13

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.  For the reasons given above, the undersigned recommends this claim be denied.

B. *Ineffective Assistance of Trial Counsel*

Petitioner next claims that trial counsel was ineffective for failing to investigate and argue that California state law prohibits an individual from being punished for being a felon in possession of a firearm and for discharging a firearm during a robbery, relying on section 654. Respondent maintains the state court's rejection of the claim was reasonable, precluding relief in these proceedings.  (See ECF No. 30 at 6-8.)

In his second state habeas petition filed in the Sacramento County Superior Court, petitioner argued that section 654 prohibited the punishment imposed in his case.  (ECF No. 31-1 at 5-6.)  In a reasoned opinion dated December 28, 2018, that court held:

> Here, Petitioner claims that his sentence is illegal because his convictions stem from the same course of conduct and that the court should stay all but one firearm related sentence under Penal Code section 654.  However, the only two firearm related sentences imposed are for personal discharge of a firearm and being a felon in possession of a weapon.  Imposing sentence on both of these convictions is entirely permissible, as the crime of felon in possession of a weapon is complete once the intent to possess is perfected by possession.  What the ex-felon does with the weapon later is another separate and distinct transaction leading to a different offense.  (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1414.)  Therefore, section 654 will not bar punishment for both firearm possession by a felon and for the primary crime of which the defendant is convicted.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1141.)

(ECF No. 31-2 at 2.)  In his state habeas petition filed with the California Supreme Court in April 2019, petitioner asserted trial counsel rendered ineffective assistance of counsel by failing to investigate and argue that section 654 "prohibits multiplicity sentence punishment for a single conduct."  (ECF No. 31-5 at 13-15.)  That court summarily denied the petition.  (ECF No. 31-6.)

Applicable Legal Standards

Again, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

1    proceeding would have been different." Strickland v. Washington, 466 U.S. at 687-88, 694.

2          Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

3    failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a

4    'strong presumption' that counsel's representation was within the 'wide range' of reasonable

5    professional assistance." Richter, 562 U.S. at 104 (2011) (quoting Strickland, 466 U.S. at 689).

6    Petitioner must rebut this presumption by demonstrating that his counsel's performance was

7    unreasonable under prevailing professional norms and was not the product of "sound trial

8    strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is

9    "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at

10   the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after

11   thorough investigation of law and facts relevant to plausible options are virtually

12   unchallengeable." Strickland, 466 U.S. at 690.

13         The second prong of the Strickland test requires a petitioner to show that counsel's

14   conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a

15   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

16   would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine

17   confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions

18   'more likely than not altered the outcome,' but the difference between Strickland's prejudice

19   standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

20   Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different

21   result must be substantial, not just conceivable." Id.

22         The California Supreme Court has held that whether possession of a firearm by a felon

23   under section 12021 constitutes a divisible transaction from the offense in which the felon

24   employs the weapon depends on the facts and evidence of each individual case. People v.

25   Bradford, 17 Cal.3d 8, 22 (1976). "Thus, where the evidence shows a possession distinctly

26   antecedent and separate from the primary offense, punishment on both crimes has been

27   approved." People v. Jones, 103 Cal.App.4th 1139, 1143 (2002) (internal quotation marks &

28   citation omitted). However, "where the evidence shows a possession only in conjunction with the

15

primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." Id. (internal quotation marks & citation omitted). California courts also have held that a crime is committed under section 12021 "'the instant the felon in any way has a firearm within his control.'" Id. at 1145-46 (quoting People v. Ratcliff, 223 Cal.App.3d 1401, 1410 (1990) (italics omitted)). Thus, "[c]ommission of a crime under section 12021 is complete once the intent to possess is perfected by possession.  What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon." Ratcliff, 223 Cal.App.3d at 1414.

                    Analysis

       The state court's decision was not unreasonable.

       A review of the record reveals evidence that petitioner, a convicted felon[6], possessed a firearm while in co-defendant Arman's vehicle and before entering the market.  (ECF No. 14-9 at 389, 392 [co-defendant's testimony].)  Further, there was evidence that petitioner discharged the firearm while inside the market robbing the clerk.  (ECF No. 14-9 at 189 [clerk at B&W Liquor testified that as she bent down to retrieve a carton of cigarettes, she "saw the flame or heat come out of barrel of the gun and just like some smoke and just loud bang, he fired the gun"], 273-77 [testimony re gunshot residue collected from petitioner's hands], 282-283 [testimony re shell casing located inside B & W Liquor], 358 [testimony of criminalist that casing found at B&W Liquor was fired from weapon found in possession of petitioner], 583-90 [testimony re positive gunshot residue results from petitioner's hands.)  Additionally, after the robbery was completed, petitioner and his co-defendant were found to be in possession of a firearm where the gun was located behind the passenger seat of co-defendant Arman's vehicle.  (ECF No. 14-9 at 243-45, 248 [officer testified found loaded handgun in backseat of stopped vehicle "shoved between the cushion" in the backseat], 253-254 [photos of weapon found in vehicle], 256.)  As the state superior court held, section 654 does not preclude punishment for the two distinct crimes of being

_____

[6] The parties stipulated that petitioner was convicted of a felony prior to April 1, 2012.  (ECF No. 14-9 at 365.)

1   a felon in possession of a firearm and for discharging a weapon during a robbery.  Bradford, 17

2   Cal.3d at 22; Ratcliff, 223 Cal.App.3d at 1414.  The record establishes petitioner possessed a

3   firearm while a convicted felon and separately committed a robbery wherein he discharged that

4   firearm.

5          Given the above, trial counsel did not perform deficiently for counsel is not required to

6   present frivolous motions or make meritless arguments.  See Jones v. Smith, 231 F.3d 1227, 1239

7   n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (an attorney's

8   failure to make a meritless objection or motion does not constitute ineffective assistance of

9   counsel).  Nor can petitioner show prejudice where there is no reasonable probability of a

10  different outcome had trial counsel performed as petitioner suggests, because had trial counsel

11  asserted the argument that section 654 prohibited imposition of a sentence for each of the two

12  crimes, the argument would have failed as California law permits the very sentence imposed here.

13  Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) (to prevail under Strickland, petitioner must

14  establish that foregone motion would have been meritorious); Strickland, 466 U.S. at 687-88,

15  694.

16         In sum, the state appellate court's determination was not contrary to, or an unreasonable

17  application of, clearly established Supreme Court authority.  28 U.S.C. § 2254(d).  Therefore, the

18  undersigned recommends the claim be denied.

19         C.  *Trial Court's Imposition of Sentence for Firearm Convictions*

20         In his third claim for relief, petitioner contends the trial court erred in imposing

21  punishment for being a felon in possession of a firearm and discharging a firearm in violation of

22  section 654.  Respondent maintains petitioner has failed to state a claim for relief because errors

23  of state law are not reviewable in federal habeas.  (ECF No. 30 at 8-9.)

24         Petitioner presented this claim in his second state habeas petition to the Sacramento

25  Superior court; it denied the claim in a reasoned opinion.  (ECF No. 31-1 at 5-6.)  That portion of

26  the decision is excerpted in the discussion of ground two above.  See IV, B., ante.

27  //

28  //

Relevant Background Information

Following petitioner's conviction, he was sentenced on January 8, 2016.  (ECF No. 14-11 at 225-26.)  Initially, a court trial was held concerning petitioner's prior 2007 conviction in Yuba County Superior Court for terrorist threats (§ 422) and related criminal street gang allegation (§ 186.22(b)(1)); the trial court found the prior conviction and accompanying special allegation to be true.  (ECF No. 14-9 at 791-92.)  The court elected to sentence petitioner before his co-defendant.  (ECF No. 14-9 at 795.)  Following argument by defense counsel for petitioner and the prosecutor (ECF No. 14-9 at 795-98), the trial court pronounced judgment in relevant part:

> [THE COURT]:  But I can say that certainly in this case what I heard was that the defendant entered a store and really for no - - no reason other than he wanted to hurry the victim along, he discharged his firearm.
>
> And I recognize that 12022.53 (C) does have a very large sentence.  I mean, it's a 20-year sentence.
>
> But the defendant shoots off his gun. And in a - - in a - - from what I can see or hear in this case, not only was there no reason but the defendant was - - also had some level of alcohol in him or drugs, one or the other.
>
> It - - we are just lucky that somebody didn't get hit by this bullet.  I don't know how great his aim is or what his experience with firearms is.  But clearly, his prior conviction simply he engaged in shooting a weapon.  He seems to have no concerns about shooting off a firearm, and certainly that's the kind of thing that results in people dying.
>
> It is - - it is about as aggravated of a case as you can - - can have for a robbery, short of someone getting shot with a gun.

(ECF No. 14-9 at 798-99.)  And,

> [THE COURT]:  The Court is going to impose the upper term of five years as recommended by probation.
>
> That term will be doubled because of the defendant's strike prior.
>
> So that's five years for Count 1.  That's the 211, second degree.  Doubled for the strike prior for a total of 10 years.
>
> And then the Court is also imposing under 12022.53 (C) an additional and consecutive 20-year sentence for 30 years.
>
> As to Count 2, violating … section 29800 (A)(1), the Court is going to impose the middle term of one-third of the middle term which would be eight months.  Doubled pursuant to the strike for 16 months.

18

1    And in addition, the Court will impose the five-year prior under 667
     (A) for a total aggregate prison sentence of 36 years and four months.
2

3    (ECF No. 14-9 at 800.)

4              Discussion

5         Petitioner argues that the trial court erred in imposing a sentence for being a felon in

6    possession of a firearm as well as for discharging a firearm during a robbery in violation of

7    section 564.  However, respondent correctly argues that a claim involving the application or

8    interpretation of state law is not cognizable on federal habeas review.

9         An error in applying state sentencing law would not state a claim for federal habeas relief.

10   See Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir.

11   1989) (sentencing error under § 654 does not state cognizable claim).  A federal habeas court is

12   bound by the state court's determination of state law.  Estelle, 502 U.S. at 67-68 ("we

13   reemphasize that it is not the province of a federal habeas court to reexamine state-court

14   determinations of state-law questions").

15        Additionally, petitioner has not shown error.  The Sacramento County Superior Court

16   found that evidence established petitioner was in possession of a firearm when he arrived at the

17   liquor store.  After entering the store and demanding more money from the clerk owner, petitioner

18   discharged the weapon before fleeing the store.  Thus, petitioner committed two separate acts:

19   arming himself with the gun and using the gun.

20        Petitioner has not shown that any sentencing error was "so arbitrary or capricious as to

21   constitute an independent due process" violation.  Richmond v. Lewis, 506 U.S. 40, 50 (1992).

22   Habeas relief is not warranted; the undersigned recommends this claim be denied.

23        D.  *Insufficiency of the Evidence in Sentencing Context*

24        In this claim, petitioner asserts sentencing error wherein the trial court "used insufficient

25   evidence to double the primary offense to ten year[s]."  (ECF No. 31-5 at 18.)  Respondent

26   maintains the state superior court's determination was reasonable, and that to the degree

27   petitioner is alleging there was insufficient evidence to support the underlying prior conviction,

28   no clearly established federal law requires that prior convictions be proven beyond a reasonable

                                        19

1  doubt.  (ECF No. 30 at 10-11.)

2  <u>Relevant Background</u>

3  At sentencing, the trial court considered petitioner's prior conviction:

4  [THE COURT]:  At the conclusion of the trial last time Mr. Xiong
5  waived jury trial on the issue of the priors.

6  And we sent it to probation with the understanding or asking them to
   consider it as if it had been found true.

7  But that we actually didn't conduct the trial as I recall, the Court trial
8  on the issue of the priors. And at this time we should proceed to that
   issue.

9  Is that okay, Mr. Cohen?

10  MR. COHEN: Yes.

11  THE COURT: The People had previously marked People's Exhibits
12  25 and 26 for that purpose.

13  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14  People's 25 is a 969 (b) package and People's 26 is a copy of a packet
   from Yuba County Superior Court showing the previous conviction.

15  Do either party wish to add any further evidence or argue the case on
16  the issue of the truth of the priors, Mr. Wasley?

17  MR. WASLEY: Submitted.

18  THE COURT: Mr. Cohen?

19  MR. COHEN: Submitted.

20  THE COURT:  Okay.  All right.  The People alleged two priors.
   They are the same priors I should say but that you alleged them under
21  two different code sections.

22  One is that you alleged that on July 27, 2000 and 7 in the Superior
   Court of Yuba County the defendant was convicted of terrorist
23  threats in violation of 422.

24  And there was a street gang - - criminal street gang violation or
   allegation under 186.22 of the Penal Code.  You alleged that he was
25  convicted of that - - of that.

   And you allege that as a strike and also as a 667 (a) five-year prior.
26
27  I reviewed the 969 (B) packet.  I clearly find that the convictions
   obtained therein are of the defendant Mr. Xiong.

28  There is a photograph actually attached to the 969 (B) of Mr. Xiong.

20

1

It's clearly [a] photograph of the defendant.

2

And in addition, there is a abstract of judgment from Yuba County

3

showing the defendant was convicted of Penal Code section 422 on July 27 of the year 2000 and 7, and that he received, of course, a prison term for that.

4

5

Also shows the allegation under 186.22 (B) (1) to have - - to have been found true or that he's convicted of that.

6

And that shows both the 969 (b) and the Yuba County prior, People's

7

Exhibit Number 26, has the same abstract of judgment showing the same conviction.

8

Based on all that, I do find that the prior conviction that has been alleged in the information is true.

9

10

(ECF No. 14-9 at 790-92.)  The trial court then went on to impose the upper term of five years,

11

doubled for the "strike prior for a total of 10 years." (ECF No. 14-9 at 800.)  Additionally, the

12

court imposed a 20-year sentence for discharging a firearm, and one-third the middle term, or

13

eight months doubled for the strike prior to sixteen months, for being a felon in possession of a

14

firearm.  (Id.)  Finally, it imposed a five-year prison term pursuant to section 667(a) "for a total

15

aggregate prison sentence of 36 years and four months."  (Id.)  When the trial court concluded the

16

sentencing proceeding as to petitioner (see ECF No. 14-9 at 803-04), it moved onto the

17

sentencing of co-defendant Arman.

18

Discussion

19

The undersigned agrees with respondent's assertion that during the trial court's comments

20

concerning co-defendant Arman's indicated sentence, including mention of petitioner being a

21

gang member and the criminal street gang allegation tied to petitioner's prior conviction, "[n]one

22

of the discussion regarding gangs was used as a basis for Petitioner's sentence."  (ECF No. 30 at

23

10.)  Petitioner has either misunderstood the trial court's sentence and/or taken the trial court's

24

comments out of proper context.  In any event, there was no error.

25

The undersigned further agrees with respondent that there exists no clearly established

26

federal law requiring a state court to prove prior convictions beyond a reasonable doubt.  See,

27

e.g., Dretke v. Haley, 541 U.S. 386, 395-96 (2004).

28

//

21

1   In sum, the trial court did not err and the state superior court's finding was not

2   unreasonable or contrary to clearly established federal law.  28 U.S.C. § 2254(d).  Therefore, the

3   undersigned recommends this claim too be denied.

4       E.   *Trial Court's Failure to Dismiss the Firearm Enhancement*

5       Petitioner complains the trial court erred in failing to exercise its discretion to strike the

6   20-year firearm enhancement pursuant to section 1385 and "the newly enacted Senate Bill 620."

7   Petitioner further contends that in failing to do so, the trial court violated his constitutional right

8   to equal protection of the law.  (ECF No. 31-5 at 19-22.)  In reply, respondent contends the state

9   court's denial of relief was proper and does not present a cognizable federal claim, nor has

10  petitioner proven his constitutional right to equal protection was violated.  (ECF No. 30 at 11-13.)

11          <u>Relevant Background</u>

12      Petitioner presented his claim to the state superior court in his second habeas petition.

13  (ECF No. 31-1 at 8-11.)  The state court denied the claim, reasoning as follows:

> Petitioner also claims that the trial court has the discretion to strike
> a firearm enhancement under Senate Bill 620, and should now do so.
> SB 620 is a reference to legislation that has amended Penal Code §§
> 12022.5(c) and 12022.53(h) to provide that the court may, in the
> interest of justice pursuant to Penal Code section 1385 and at the time
> of sentencing, strike or dismiss a Penal Code § 12022.5 or 12022.53
> enhancement. SB 620, however, does not give courts jurisdiction to
> entertain postjudgment motions to strike such enhancements
> pursuant to Penal Code § 1385. The court does not have any
> jurisdiction to dismiss the firearm enhancement in the interest of
> justice pursuant to Penal Code § 1385, once judgment has been
> pronounced. (*People v. Chavez* (2018) 4 Cal.5th 771.) Nor does any
> principle from *In re Estrada* (1965) 63 Cal.2d 740 apply in any
> manner, as *Estrada* applies only to cases that were still pending on
> the effective date of an ameliorative statute. Here, Petitioner's case
> became final in 2017, well before the effective date of SB 620 and
> he is not entitled to relief. Similarly, Petitioner's related request to
> recall the remittitur in order to apply SB 620 is without merit because
> generally it is a request better suited to the appellate court and
> specifically is not the appropriate procedural vehicle through which
> to seek the requested relief in cases that are final for purposes of
> *Estrada* and involve the application of SB 620. (*People v. Harris*
> (2018) 22 Cal.App.5th 657, 659.)
>
> Petitioner claims that the failure to retroactively apply the benefits of
> SB 620 violates equal protection. However, courts have repeatedly
> held that a "'statute ameliorating punishment for particular offenses
> may be made prospective only without offending equal protection,
> because the Legislature will be supposed to have acted in order to

optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them.' [Citations.]" (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1467.)  Moreover, SB 620 merely provides the trial court with discretion to strike the firearm enhancement.  "In light of the unlimited factors related to individual offenders that inform the exercise of discretion, no two individual offenders may be said to be similarly situated for purposes of resentencing under the Act." (*People v. Buford* (2016) 4 Cal.App.5th 886, 920.)  As a result, Defendant cannot establish he has been denied equal protection as against any other similarly situated individual.

(ECF No. 31-2 at 2-3.)  The California Supreme Court denied the claim without comment.  (ECF No. 31-6.)

<u>Discussion</u>

The state superior court's determination rested on a determination of state law, to wit: its interpretations of section 1385 and the effect of SB 620.  This court is bound by that determination.  See <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).  As the United States Supreme Court held in <u>Swarthout v. Cooke</u>, 562 U.S. 216 (2011), "[t]he habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."' 'We have stated many times that "federal habeas corpus relief does not lie for errors of state law."'"  <u>Id.</u> at 219 (internal citations omitted).  Hence, petitioner's claim is precluded.

Further, the state court did not unreasonably deny petitioner's equal protection claim.  The Equal Protection Clause requires, generally, that similarly situated persons be treated similarly.  See <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  Equal protection is violated by intentional discrimination against a person based on his or her membership in a protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or by intentional treatment of a member of an identifiable class differently from other similarly situated individuals without a rational basis for the difference in treatment (i.e., a rational relationship to a legitimate state purpose), <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  A state is not, however, precluded from placing persons in different classifications so long as the disparate classifications have a rational basis and are not based on traditional suspect classes:

> "The Constitution does not require things which are different in fact ...to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 []. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made."

Estelle v. Dorrough, 420 U.S. 534, 538-39 (1975) (internal quotations & string citation omitted); see also Heller v. Doe by Doe, 509 U.S. 312, 319 (1993) ("a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity"). "For statutory challenges made on Equal Protection grounds, 'the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest.'" United States v. Harding, 971 F.2d 410, 412 (9th Cir. 1992) (quoting City of Cleburne, 473 U.S. at 440). Further, "the rational basis standard does not require that the state choose the fairest or best means of advancing its goals." Robinson v. Marshall, 66 F.3d 249, 251 (9th Cir. 1995) (rejecting equal protection challenge to Cal. Penal Code § 2900.5).

Federal courts should not "overturn [a statute that does not burden a suspect class or a fundamental interest] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Pennell v. City of San Jose, 485 U.S. 1, 14 (1988) (quoting Vance v. Bradley, 440 U.S. 93, 97 (1979)).

This lowest level of review does not look to the actual purposes of the law. Rather, it considers whether there is some conceivable rational purpose that legislators could have had in mind when they enacted the law. See SmithKline Beecham Corp. v. Abbott Labs, 740 F.3d 471, 481 (9th Cir. 2014). "When conducting an equal protection analysis, we first identify the groups being compared. 'The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified . . ..'" Taylor v. San Diego County, 800 F.3d 1164, 1169 (9th Cir. 2015) (citing Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1064 (9th Cir. 2014)). "While the group members may differ in some respects, they must be similar in the respects pertinent to the State's policy." Id.; Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

"[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Nordlinger, 505 U.S. at 10 (citations omitted).

Here, he has failed to demonstrate the trial court's refusal to dismiss the firearm enhancement violates the Equal Protection clause. At a minimum, fairminded jurists could disagree that petitioner failed to prove he was similarly situated to other convicted persons who received relief from imposition of a firearm enhancement pursuant to section 1385. Richter, 562 U.S. at 101 (state court "determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision"). Therefore, petitioner is not entitled to habeas relief on the claim, and it is hereby recommended his claim be denied.

F.   *Conduct Credits*

Next, petitioner argues his due process rights were violated when the trial court "failed to provide sentence credits" pursuant to section 4019. He claims an amended abstract of judgment should issue awarding additional days of custody credit. (See ECF No. 31-5 at 23-26.) Respondent replies the claim involves only state law and thus is precluded in these proceedings, and that even were the claim reviewable, a review of the record reveals no violation of state law. (ECF No. 30 at 13-14.)

Relevant Background

 In pronouncing judgment, the trial court found that petitioner had "1,374 days of credits. He'll receive 206 days of good-time work-time credits for a total of 1,500 and 80." (ECF No. 14-9 at 800.) The abstract of judgment filed January 15, 2016, reflects those same numbers. (ECF No. 14-11 at 225-26.)

Section 4019 generally provides for the application of work performance and good behavior time credit application "to certain prisoners," as reflected in its title, at four days for every two days spent in actual custody. Significantly here, however, subdivision (a) of section 2933.1 addresses worktime credit where an individual has been "convicted of a felony offense

25

listed in subdivision (c) of Section 667.5" and provides that such an individual "shall accrue no more than 15 percent of worktime credit."  The statute applies "[n]otwithstanding any other law" and in subdivision (c) states expressly:  "Notwithstanding Section 4019 or any other provision of law the maximum credit may be earned against a period of confinement in, or commitment to, a county jail … following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)."  Notably, subdivision (c) of section 667.5 includes the felony offense of robbery (§ 667.5(c)(9) ["Any robbery"]), as well as for discharging a firearm during the commission of a crime (§ 667.5(c)(22) ["Any violation of Section 12022.53"].)[7]

Discussion

A claim of state sentencing error does not raise a federal constitutional question for federal habeas review.  See Lewis v. Jeffers, 497 U.S. at 783.  Petitioner's claim that he was denied pre-sentence credits may not be reviewed by this court.  See, e.g., Watts v. Bonneville, 879 F.2d at 687 (alleged violation of section 654 is state law claim not cognizable in federal habeas under § 2254).  And any supposed assertion concerning a denial of due process will not automatically "transform a state law issue into a federal one . . .."  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  In the sentencing context, a state violates a criminal defendant's due process right to fundamental fairness only if it arbitrarily deprives the defendant of a state law entitlement.  See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980).

As noted above, California's section 2933.1 limits pre-sentence credits to "15 percent of the actual period of confinement" for any person convicted of a felony offense specified in subdivision (c) of section 667.5.  Applicable here, subdivision (c) of section 667.5 in turn includes the crimes of robbery and discharge of a firearm during the commission of a crime.  Moreover, section 2933.1 makes clear that its 15 percent limitation applies "[n]otwithstanding Section 4019 or any other provision of law."  Under these circumstances, the state court's rejection of petitioner's claim, and determination that he is subject to section 2933.1's fifteen

[7] The probation report prepared in petitioner's matter reflects that section 2933.1(c) mandates fifteen percent worktime credit.  (ECF No. 14-11 at 222.)

percent limitation, cannot be said to be arbitrary.  Hicks, 447 U.S. at 346.  Nor can the state

court's rejection of the claim be said to be objectively unreasonable.  See Williams v. Taylor, 529

U.S. at 409.

Petitioner is not entitled to federal habeas relief on his pre-sentence credits error claim.

Therefore, the undersigned recommends the claim be denied.

G.  *Trial Court's Failure to Recall the Remittitur*

Finally, petitioner contends recall of the remittitur is appropriate in his case because there

is a "reasonable chance" the "firearm enhancement would be stricken" if petitioner was "given an

opportunity to present the issue at resentencing."  (ECF No. 31-5 at 27-29.)  Respondent argues

this claim too involves only state law and thus is precluded in these proceedings.  Further,

respondent claims petitioner cannot show actual prejudice for the trial court's failure to recall the

remittitur barring relief in these proceedings.  (ECF No. 30 at 14-15.)

Relevant Background

The Sacramento County Superior Court considered petitioner's claim and declined to

recall the sentence.  (ECF No. 31-7.)  More specifically, in a reasoned four-page decision, that

court found, in relevant part:

> The court need not answer the questions of the validity of the recent
> amendments to Penal Code §§ 667(a), 1170(d) (1), and 1385 at this
> time, as this court declines to recall the sentence and resentence.
> Defendant John Xiong committed the crime of robbery with
> discharge of a gun in 2012, and was not sentenced until 2016, thus
> has only spent three years in state prison for this very serious and
> violent felony offense.  Xiong was convicted at a jury trial, and was
> determined to have personally discharged the gun during the
> commission of the robbery.  In addition, he stands convicted of
> possessing a firearm as an ex-felon in the case as well.  At the time
> of judgment and sentencing, the court could have dismissed the
> "strike prior" and not doubled his sentence for the robbery, but chose
> not to do so. As the Judge of the court who presided over the jury
> trial, and having heard the witnesses testify and viewed the evidence,
> the Honorable Ernest Sawtelle DECLINES to disturb the sentence
> imposed in any manner, because the sentence imposed reflects the
> proper measure of justice for the crimes he committed.  If the
> Secretary of the Department of Corrections and Rehabilitation
> believes that defendant Xiong is deserving of a commutation of
> sentence, the Secretary may seek a commutation of the sentence from
> the Governor.

1  (ECF No. 31-7 at 3-4.)

2            Discussion

3            Here, as elsewhere, petitioner presents a claim arising under state law.  And a state court's

4  interpretation of state law "binds a federal court sitting in habeas corpus."  Bradshaw v. Richey,

5  546 U.S. at 76 (citing Estelle v. McGuire, 502 U.S. at 67-68).  Petitioner did not previously assert

6  in the state court habeas proceedings, nor does he presently assert a federal constitutional basis

7  for his claim other than single, passing reference to the "Fifth and Fourteenth Amendments."  In

8  the state court proceedings, he identified no other federal law supporting his claim, nor does he do

9  so here.

10           Simply stated, the state court's declination to recall the sentence cannot be reconsidered

11  here.  Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the

12  basis of a perceived error of state law"); see, e.g., Sauch v. Schaivo, 289 F.3d 616, 622-23 (9th

13  Cir. 2002) (state prisoner's challenge to trial court's exercise of discretion under state sentencing

14  law fails to state federal habeas claim), cert. denied, 537 U.S. 859 (2002); Nelson v. Biter, 33 F.

15  Supp. 3d 1173, 1176-78 (C.D. Cal. 2014) (petitioner's contention that he was entitled to

16  resentencing under California Penal Code § 1170.126 did not present a federal constitutional

17  claim); Mills v. Marsh, No. CV 19-5237-DDP (MAA), 2020 WL 1180433, at *3 (C.D. Cal. Jan.

18  9, 2020), report and recommendation adopted, 2020 WL 5202073 (C.D. Cal. Sept. 1, 2020)

19  (holding that petitioner's claim seeking resentencing pursuant to § 1170(d)(1) did not present a

20  cognizable federal habeas corpus claim); Nichols v. Pfeiffer, No. CV 19-6356-DSF (JC), 2019

21  WL 4014429, at *7 (C.D. Cal. Aug. 26, 2019) (finding that resentencing claim grounded on

22  § 1170(d)(1) was noncognizable); Housh v. Rackley, No. CV 17-4222-HSG (PR), 2019 WL

23  1117530, at *2 (N.D. Cal. Mar. 11, 2019) (finding that petitioner's filing of motion for recall of

24  sentence under § 1170(d)(1) did not present cognizable federal claim).

25           A state court's misapplication of state sentencing law may violate due process if a

26  petitioner can demonstrate both state sentencing error and that the error was "so arbitrary or

27  capricious as to constitute an independent due process" violation.  Richmond v. Lewis, 506 U.S.

28  at 50.  However, as previously noted, a habeas petitioner "may not ... transform a state-law issue

28

into a federal one merely by asserting a violation of due process." <u>Langford v. Day</u>, 110 F.3d at 1389.

Here, at the original sentencing proceeding, the trial court recognized that imposition of the section 12022.53 enhancement "does have a very large . . . 20-year sentence" but despite its mandatory application, went on to indicate why that sentence was appropriate: because petitioner shot "off his gun" for "no reason" and that "we are lucky that somebody didn't get hit by this bullet" (ECF No. 14-9 at 798), and that petitioner "seems to have no concerns about shooting off a firearm, and certainly that's the kind of thing that results in people dying. [¶]  It is - - it is about as aggravated of a case as you can - - can have for a robbery, short of someone getting shot with a gun" (ECF No. 14-9 at 799).  In its later determination concerning petitioner's claim for recall of the remittitur and resentencing, the trial court declined to "disturb the sentence imposed in any manner" and indicated the original sentence "reflects the proper measure of justice for the crimes he committed."  Nothing about this finding is "arbitrary or capricious" and, therefore, the failure of the court to recall the remittitur and resentence petitioner did not deprive him of due process. <u>Richmond v. Lewis</u>, 506 U.S. at 50.

It seems clear that despite petitioner's assertion there is a reasonable chance the firearm enhancement (or any enhancement) would have been stricken at resentencing, the trial court was very unlikely to do so.  In any event, fairminded jurists could disagree as to correctness of the superior court's findings concerning petitioner's habeas claim.  <u>Richter</u>, 562 U.S. at 101. Accordingly, the undersigned recommends this claim also be denied.

VI.  <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

29

1    he shall also address whether a certificate of appealability should issue and, if so, why and as to

2    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

3    applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

4    § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

5    service of the objections.  The parties are advised that failure to file objections within the

6    specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

7    F.2d 1153 (9th Cir. 1991).

8    Dated:  January 3, 2022

9

10                                                    _____
                                                     KENDALL J. NEWMAN
11   Xiong0373.157                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28